BROOKWOOD PARKS, INC., Appellant, v. FRANK R. JACKSON, Respondent.

Third Department, March 5, 1941.

*Arthur C. Kyle* [*Ellsworth Baker* of counsel], for the appellant.

*John D. Lyons*, for the respondent.

FOSTER, J. The action herein is for the specific performance of an option to purchase real estate in the towns of Lumberland and Highland, Sullivan county, N. Y. This option was in writing, made on the 13th day of June, 1936, between one Frank R. Jackson and Arthur Freestone. By its terms Jackson gave to Freestone an option to purchase the premises known as Brookwood Parks for the price of $80,189.90. The option provided in part: " Freestone will pay to Jackson the following sums on June 15, 1936, $1,189.90; on September 15, 1936, $1,000; on October 15, 1936, $1,000; on November 15, 1936, $1,000; on December 15, 1936, $1,000. It is understood that time is of the essence and that the foregoing payments will be made on or before the dates stipulated, and upon the failure of Freestone to make any of the aforesaid payments on said dates this option shall terminate and be null and void without further notice." It further provided in substance that if Freestone made the payments mentioned, and the additional payment of $10,000, Jackson would enter into an agreement with him or his assigns for the sale of the premises for the balance of the purchase price of $65,000. It also contained the following clause: " It is further understood and agreed that Freestone shall have possession of said premises as tenant of Jackson from and after the date of these presents and that their relations shall be as tenant and landlord during the term of this option and until default be made by Freestone in the payment of any of the sums above referred to, with the further understanding that during his tenancy as aforesaid Freestone will maintain and keep the above mentioned premises in repair at his own expense."

Apparently it is not denied that payments under the option were made up to and including the 15th of October, 1936. It is claimed by the defendant that no payments were made thereafter. Plaintiff claims that the defendant received payment for the amount due on November 15, 1936, from the proceeds of a sale of part of the premises to one Kalin, which amounted to $1,200. The conveyance to Kalin was signed and executed by both the defendant Jackson and Freestone. Defendant Jackson does not deny the consideration of $1,200 paid by Kalin for this conveyance, but says that according to the arrangement between the parties

one Arthur C. Kyle, an attorney, received a commission of $240 which was deducted therefrom, and that the balance was to be applied on the last payment under the option agreement. The defendant accordingly considered Freestone in default and made other arrangements concerning the premises. Considerable litigation followed which is immaterial for the proper disposition of the issues on this appeal. Suffice it to say that plaintiff claims an assignment in writing, dated December 3, 1939, of all the right, title and interest of Freestone in and to the option, and of any claim for damages sustained by Freestone on account of the alleged failure of the defendant Jackson to perform the option on his part.

After this assignment plaintiff brought this action, alleging that it and Freestone had duly performed all of the terms and conditions of the option except in so far as they were prevented from doing so by the acts of the defendant, and offering to pay any amount which may be found due the defendant. Judgment was demanded that the defendant be required to perform the option in so far as he may be able to do so; that he account to plaintiff for all sums of money received for the sale of any part of the premises; and that he respond in damage for failure to perform the agreement and for damage to the freehold. Defendant interposed an answer denying the pertinent allegations of the complaint, and alleging at some length a history of previous litigation between the parties or their privies, and setting forth as a further defense that the plaintiff had no right to maintain the action on the ground that the option was taxable under the provisions of the Tax Law, and that no tax was ever paid.

Plaintiff moved at Special Term for an order to examine the defendant before trial, and also for an order framing certain issues for trial. The defendant made a counter-motion for an order directing summary judgment in his favor and against the plaintiff. The court at Special Term denied plaintiff's motions and granted the defendant's motion for summary judgment. It is recited in the order denying plaintiff's motions and granting summary judgment in favor of the defendant that the complaint is dismissed upon the merits upon the ground that the same fails to state facts sufficient to constitute a cause of action, and upon the further ground that the opposing affidavits establish the fact that plaintiff is not entitled to recover judgment against the defendant herein. From this order and judgment plaintiff appeals.

Applying the rule that the most favorable inference must be drawn in favor of the complaint and the affidavits in support thereof, we differ with the court below, which granted summary judgment. There is, according to our view, a triable issue of fact

disclosed by the pleadings and affidavits as to whether plaintiff's assignor defaulted in making the payment due under the option on November 15, 1936. It is conceded that a part of the premises were sold to Kalin for $1,200. It is not denied that Freestone joined in the conveyance. It is not even denied that at least the major portion of this consideration was to be applied upon the purchase price under the option. The dispute centers over whether it should be applied upon the last payment due under the option or whether, as plaintiff claims, it was retained by the defendant Jackson in payment of the amount due on November 15, 1936. The court below laid great stress upon letters written by Mr. Kyle in which he stated in substance that Freestone had defaulted. Of course, these letters were not binding upon Freestone, and moreever there is Kyle's explanation that when he wrote them he did not understand the alleged arrangement between Jackson and Freestone as to the application of the $1,200 received from Kalin. Freestone in his affidavit denies that there was any agreement to the effect that the money received from Kalin was to be applied on the last payment under the option, or that Kyle was to be paid any commission for procuring the Kalin contract. He does not say directly that this money was to be applied on the payment due November 15, 1936, but the inference to be drawn from his affidavit is to that effect, and this is supported by the affidavit of Henry Smith, who is the president of the plaintiff. While perhaps the pleadings and affidavits leave much to be desired in the way of exact chronology and precision in crucial allegations, we find nevertheless that there is a real issue as to whether Freestone defaulted in the payment of this item in controversy. The determination of this issue necessarily involves the credibility of the defendant Jackson, Freestone and Kyle to such an extent that it cannot be satisfactorily or justly determined upon affidavits alone.

The defendant raises also the issue of law that since the option is purely unilateral it cannot be enforced either by Freestone, or by his assignee, the plaintiff. It may be freely acknowledged that there has been considerable confusion in the authorities as to the right of a vendee or assignee to compel specific performance of certain types of options, and indeed executory contracts. The rule as to options has been stated as follows: "When a valid option to purchase real property is accepted the obligations and remedies of the parties become mutual so as to make specific performance a proper remedy." (*Hamilton College* v. *Roberts*, 223 N. Y. 56.) An option under seal, such as the one involved here, reciting a consideration and providing that the agreement is binding upon

the respective parties, their heirs and assigns, is clearly assignable. (*Cochran* v. *Taylor*, 273 N. Y. 172.) In this case, if it is found as a fact that the proceeds of the Kalin sale were to be applied in payment of the amount due on November 15, 1936, the necessary corollary is that Freestone did not default. If that is so, then he had accepted the option up to that time and was proceeding, it must be assumed, towards its complete acceptance when, as alleged, he was frustrated by the defendant. If such was the case Freestone stood in the position of one who had accepted an option in so far as he was able, and the rule quoted as to relief by way of specific performance would apply. It is urged, however, that in the assignment from Freestone the plaintiff assumed no obligations with reference to the option, and that its failure to do so effectively bars any remedy by way of specific performance. Such, however, is not the law where the assignee has invoked the aid of equity. It is held that by such act the assignee assumes the duty of performance. (*Epstein* v. *Gluckin*, 233 N. Y. 490.) Without this act, or some other act from which it might be implied that the assignee had bound himself to perform the assignor's duties, doubtless the old rule based on lack of mutuality would prevail. (*Langel* v. *Betz*, 250 N. Y. 159.) To summarize, and viewing this issue in a light most favorable to the plaintiff, the option though unilateral in its inception became an executory agreement of purchase and sale in view of Freestone's partial performance and the assumption that he would have completely performed if not prevented. Under such circumstances, and having invoked the aid of equity, his assignee is entitled to the remedy of specific performance upon proper proof.

In addition to these matters the defendant claims that plaintiff cannot maintain this action until a recording tax on the instrument in question has been paid. Section 250 of the Tax Law provides in part: " Executory contracts for the sale of real property under which the vendee has or is entitled to possession shall be deemed to be mortgages for the purposes of this article and shall be taxable at the amount unpaid on such contracts." Obviously the purpose of this section was to prohibit the substitution of a contract of sale for a mortgage as security for unpaid portions of the purchase price of real estate and thereby to avoid the payment of a recording tax. Quite evidently the option in question was never intended as security in the sense contemplated by the statute. Moreover the right of possession as given by the option was merely incidental thereto and expired with its termination. That is, if Freestone defaulted the relationship of landlord and tenant ceased; on the other hand, if Freestone completely accepted the option, then the

relationship also ceased. The agreement is silent as to whether Freestone was to have possession under a contract of sale. Presumably he was to have possession, but certainly not as a tenant in the absence of a specific clause to that effect. The point of the whole matter is that Freestone was not, in so far as we may now determine from the record, in possession of the premises under an executory contract of sale. He was in possession under an option, which is quite different. Whether such option should have ripened into an executory contract of sale is the very core of the controversy between the parties, and until that is resolved it cannot be determined whether a tax is due within the terms of the statute.

For the foregoing reasons it is our opinion that the order and judgment should be reversed. We have not mentioned in detail the matters involved in the application of the plaintiff to examine the defendant before trial, and also in its application to frame issues for a jury trial. Nevertheless we have considered these matters, and since in our opinion a triable issue of fact is presented, we are also of the opinion that plaintiff should be permitted to examine the defendant as to the matters enumerated in its moving papers, and that its application to frame issues for a jury trial should also be granted.

The order and judgment appealed from should be reversed, with costs and disbursements, and plaintiff's motion to examine the defendant before trial, and to frame issues for a jury trial, granted, with ten dollars costs. The examination of the defendant before trial may be had at a Special Term of the Supreme Court to be held at the court house, in the village of Monticello, N. Y., on April 5, 1941.

HILL, P. J., CRAPSER, HEFFERNAN and SCHENCK, JJ., concur.

Order and judgment reversed, with costs and disbursements, and plaintiff's motion to examine defendant before trial and to frame issues for a jury trial granted, with ten dollars costs.

The examination of the defendant before trial may be had at a Special Term of the Supreme Court to be held at the court house, in the village of Monticello, N. Y., on April 5, 1941.